**Delores MILES, Appellant,**

v.

**COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, Appellee.**

No. 5865.

Court of Civil Appeals of Texas, Waco.

July 6, 1978.

Rehearing Denied Aug. 10, 1978.

John F. Bass and Denny Martin, Burrow & Bass, Dallas, for appellant.

Wayne E. Lee and Glennis E. Sims, Bailey, Williams, Westfall, Lee & Fowler, Dallas, for appellee.

HALL, Justice.

This is a suit for workmen's compensation brought by Delores Miles against Commercial Insurance Company of Newark, New Jersey, workmen's compensation insurance carrier for plaintiff's employer, Fox and Jacobs, Inc. It was plaintiff's contentions on the trial that in September 1972, she suffered a disabling low-back injury on the job, that she was hospitalized and treated for the injury, and that as a result of the injury she was totally and permanently disabled within the meaning of our workmen's compensation laws. Among other defenses relied upon by defendant was its pleaded defense that neither it nor Fox and Jacobs received notice of plaintiff's asserted injury within 30 days after it allegedly occurred, as required by Article 8307, Vernon's Tex. Civ.St., for payment of benefits.

Trial was to a jury in March, 1977. The jury found that plaintiff sustained an injury on or about September 14, 1972, in the course of her employment, and that the injury was the producing cause of only total temporary incapacity from September 15, 1972, until December 4, 1972. However, in its answer to special issue number 14, the jury failed to find that plaintiff's employer had notice of the injury within thirty days after its occurrence. Based upon this finding, judgment was rendered that plaintiff take nothing. Plaintiff appeals.

Special issue number 14 and the explanatory instruction submitted with it read as follows:

"Do you find from a preponderance of the evidence that Fox & Jacobs, Inc., had notice of such injury within thirty days after its occurrence?

"Notice to or actual knowledge on the part of a foreman or other supervisor, or an agent designated by the employer to receive such notice, is 'notice' to the employer.

"Answer 'we do' or 'we do not.'"

The jury answered the issue "we do not."

Plaintiff asserts that the evidence conclusively establishes that her employer had notice of her injury within thirty days. Alternatively, she contends the jury's answer

to special issue 14 is against the great weight and preponderance of the evidence.

Plaintiff is a black female. On September 14, 1972, the date of her alleged injury, she was 48 years of age. She had been an employee of Fox and Jacobs for five years. She had never suffered an on-the-job injury and had no prior experience with workmen's compensation claims. Her duties consisted of removing kitchen cabinet doors from a shelf onto a work table, and then sanding the doors and installing hinges on them. Her working hours were from 7:00 A.M. until 3:30 P.M. each day. She testified that about 8:30 A.M. on the day in question when she lifted several cabinet doors at one time from the shelf she felt a sharp pain from her neck down to her low back. She became ill and went to the restroom and vomited. She continued working the rest of the day, with intervals of going to the bathroom for relief, but the pain in her back worsened. That night she could not sleep because of the pain, and her son carried her to the hospital. She was given medication and sent home. The next day she returned to the hospital and was admitted for treatment.

The evidence is undisputed that plaintiff entered Baylor University Medical Center on September 15, 1972, with an admission diagnosis of "acute low back strain"; that she remained in the hospital until October 4, 1972, during which time she was treated for her back problem; that after she left the hospital she received further treatment by her personal physician in his office until December 4, 1972, at which time he released her for work and she returned to work with Fox and Jacobs. She continued working there until September, 1974, when she quit her job.

Plaintiff testified that when she left work at the end of the day she hurt her back she told her supervisor, Ken Hopper, "I may not be able to come to work tomorrow because I hurt my back. And he said 'Okay.'" She did not at that time tell him how or when she injured her back, but she testified that in a telephone conversation the next day she told him that she hurt her

back when she "pulled too many doors," and that Hopper's response was, "Keep in touch with me and let me know how you are doing." She conceded, however, that in her deposition taken prior to trial she stated that in the telephone conversation "He didn't ask me [how I hurt my back or when I hurt my back] and I didn't tell him." Plaintiff also admitted that she signed some forms denominated at the top "Group Life And Health Insurance Disability Claims" which were furnished to her by her employer, and that she received benefits under them relating to her injury, but she testified that she did not then and does not now understand the difference "between Blue Cross Insurance coverage and Workmen's Compensation Insurance coverage."

Ken Hopper testified that he had been employed by Fox and Jacobs for eighteen years, and that on September 14, 1972, he was supervisor of the cabinet manufacturing department in which plaintiff worked. He denied that plaintiff told him on that day that she had hurt her back. He testified that in a telephone conversation the next day "she told me that she was sick and had to see a doctor, and I said, 'Well, what's wrong?' and she said, 'I'm sick, I have to see a doctor.' So I said, 'Call me back as soon as you find out what's wrong. I would like to know when you are going to be back to work.'" He said that a day or two later she called him again "to tell me that she was in the hospital and she had had chest pains, back pains, and stomach pains, and she wanted to talk to personnel about her insurance forms, hospitalization forms. So I transferred her to the personnel department and they took care of it from there on." He testified that plaintiff never told him that she hurt her back at work, and that the first time he learned she was claiming a job-related injury was more than a year later. Hopper also testified that plaintiff began working for Fox and Jacobs in 1968, that she was a good worker and a regular worker, and that until the time in question she never made any complaints about her back.

In September, 1972, Karen Haviland was employed in the personnel department of Fox and Jacobs as administrator of the employees' benefits and insurance programs. She testified that on the 20th or 21st of September, 1972, plaintiff called her from the hospital "to inquire about the benefits that she was entitled to. I asked her at that point what was wrong with her. She said she had stomach pains, that she had been vomiting, and that she had some back pain. I inquired of her at that time as to how it happened, and she said, 'I don't know.' At that point, I told her I would be sending her a Blue Cross disability form and gave her the instructions as to how to complete it and that it needed to be mailed back to me and then she would receive weekly disability payments. Nothing was said about her being injured while on the job lifting doors or moving doors or anything of that nature." Mrs. Haviland said she had two later conversations with plaintiff, but "again, she did not know how it happened or what was wrong with her specifically . . . If she had told me specifically at that time that she was lifting doors and hurt herself, it would have been processed as a workmen's compensation claim." The witness said she first learned plaintiff was claiming "to have injured her back" in June or July, 1975.

Essie Mae Walker testified that in September, 1972, she was employed at Fox and Jacobs as "overseer of the cabinet door department." She said that position did not carry the responsibilities of a "lead woman," but that her duties were to see that each day approximately 240 cabinet doors were completed in the department and ready for use. She said that she first learned that plaintiff "had a back injury" when she returned from a vacation of two weeks.

Vonzela Williams was plaintiff's co-worker. She testified that she was present when plaintiff injured her back. She said, "We had to go to the rack and pull the doors, and in pulling the doors [plaintiff] managed to pick up too many doors, and I heard her say, 'Oh.' I asked her what was the matter and she said, 'Oh, I hurt my—I pulled my back.'" She testified that later, within four weeks after the accident, Essie Mae Walker "came and asked me what had happened. I told her Delores was pulling the doors and she managed to pick up too many doors and said she had pulled her back." She also said that when plaintiff was in the hospital "we all went to see her out there."

Ken Hopper testified that Essie Mae Walker was not a "lead woman or overseer, or anything like that," that she had "no duties or functions or obligations as far as any personal problems that concerned any of the employees or any injuries on the job," and that she had the same job as plaintiff "with the exception that she was responsible for the flow of materials in that department."

V. P. Wills testified that he had been employed by Fox and Jacobs for twenty years. In September, 1972, he was supervisor in the paint shop. Plaintiff had previously worked under him. He gave the following testimony: "Q. Were you aware of Delores Miles alleged injury of September 14, 1972? A. When she was injured? Q. Yes. A. Yes. Q. What did you know about her injury? A. Just what I heard. I haven't seen anything. Q. You did not see her injured? A. No. What I heard, that she had a back injury. Q. Now, when did you hear that she had a back injury? A. I don't know exactly what month it was, but when I knowed anything she was in the hospital. Q. Well, was it within a month of the time? A. No, it was right after—right after this happened. Q. Was it within a week? A. I believe it was."

§ 4a of Article 8307, Vernon's Tex.Civ.St., provides in pertinent part that, "Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under [the Workmen's Compensation Act] shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening of an injury." The word "injury" as used in this statute has been construed to mean "compensable

injury." *Miller v. Texas Employers' Insurance Association,* 488 S.W.2d 489, 492 (Tex. Civ.App.—Beaumont 1972, writ ref'd n. r. e.). Necessarily, then, the word means an injury suffered in the course of employment.

Defendant states in its brief that "it was not disputed at trial that certain supervisory personnel with Fox and Jacobs knew within thirty days that plaintiff was in the hospital experiencing stomach, chest and back pains. However, it was disputed that Fox and Jacobs or defendant had any notice within thirty days that plaintiff was in any way claiming her problems to be work-related."

Defendant asserts that under the proof a fact question was raised on the issue of notice that plaintiff's back problem was job-related, and that the evidence was factually sufficient to support the jury's answer on the question. Plaintiff contends that the uncontradicted testimony of V. P. Wills, who was a supervisor for Fox and Jacobs, establishes without dispute that he knew within 30 days that plaintiff had been injured on the job. Defendant answers that the witness did not testify "that he knew plaintiff was claiming that her alleged injury was work-related," but only that he knew she was hospitalized with a back injury.

It is our view that the proof does not establish as a matter of law that plaintiff's employer knew within thirty days that plaintiff's back injury was sustained at work. Nevertheless, we are convinced that the jury's failure to find that fact in·its answer to special issue 14 is against the great weight of the evidence.

Although the witness Wills did not testify directly that he knew plaintiff's back injury occurred on the job, he did relate his knowledge of her injury to some event—he said it was "right after *this* happened." Logically, he must have been referring to the occasion when plaintiff strained her back.

Hopper's testimony shows that he knew within two or three days after the injury that plaintiff, known by him to be a good and regular employee, was in the hospital "with chest pains, back pains, and stomach pains, wanting to talk to personnel about her insurance forms." The fact that plaintiff's problems were job-related appear under the evidence to have been known within the department supervised by Hopper. Upon simple inquiry, Essie Mae Walker learned about it approximately two weeks later when she returned from vacation.

Under the whole record we hold the jury's answer to special issue 14 is contrary to the great weight and preponderance of the evidence. This ruling requires that the judgment be reversed and that the case be remanded to the trial court.

In other complaints, plaintiff assigns error to the court's failure to give a certain requested special issue, and she questions the legal and factual sufficiency of the evidence to support the jury's findings on the extent and duration of her disability. Those contentions are without merit under the record and are overruled.

The judgment is reversed and this cause is remanded to the trial court.